**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

TINA MARIE JANNICELLI,

       Plaintiff,

    vs.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

_____/

No. 2:15-CV-2521-KJM-CMK

<u>AMENDED</u>
<u>FINDINGS AND RECOMMENDATIONS</u>

       Plaintiff, who is proceeding with retained counsel, brings this action under

42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security.

Pending before the court are plaintiff's motion for summary judgment (Doc. 14) and defendant's

cross-motion for summary judgment (Doc. 21).

       The matter is before the undersigned following the District Judge's September 29,

2017, order.  In findings and recommendations issued on September 1, 2017, the court concluded

that summary judgment in favor of plaintiff was appropriate and that the case should be

remanded to the agency for further proceedings.  Specifically, the court found that:  (1) the

Administrative Law Judge failed to provide reasons for rejecting Dr. Orman's opinion that are

supported by substantial evidence; (2) the Administrative Law Judge's assessment of plaintiff's migraine headaches was supported by substantial evidence and proper legal analysis; and (3) the Administrative Law Judge's assessment of plaintiff's credibility was supported by substantial evidence and proper legal analysis.  No party filed objections and the findings and recommendations were submitted to the District Judge for review.  The District Judge concluded that she was unable "to determine if the proposed determination is correct as a matter of law."  The District Judge did not specify which "determination" – regarding evaluation of Dr. Orman's opinion, evaluation of plaintiff's migraines, or assessment of plaintiff's credibility – she was unable to resolve.

# I.  PROCEDURAL HISTORY

Plaintiff applied for social security benefits on July 13, 2008.  In the application, plaintiff claims that disability began on May 15, 2007.  Plaintiff's claim was initially denied. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on April 21, 2010, before Administrative Law Judge ("ALJ") William C. Thompson, Jr.   In a July 22, 2010, decision, the ALJ concluded that plaintiff is not disabled.  After the Appeals Council declined review, plaintiff appealed to this court.  See Jannicelli v. Astrue, No. 2:12-CV-1678-CKD.  The court reversed and remanded for further consideration of the opinions of plaintiff's treating physician, Dr. Orman.

On remand, a second hearing was held before ALJ G. Ross Wheatley on July 15, 2014.  In an August 8, 2014, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

1.    The claimant has the following severe impairment(s): fibromyalgia; migraine headaches; left knee degenerative joint disease, status post surgeries; depression; and anxiety;

2.    The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3.  The claimant has the following residual functional capacity: the claimant can perform light work; she can lift/carry up to 20 pounds occasionally and up to 10 pounds frequently she can sit for six hours and stand/walk for up to three hours; she can occasionally bend, stoop, squat, and kneel; she cannot crawl or climb ladders, ropes, or scaffolds; she cannot work around unprotected heights and hazardous machinery; she can occasionally climb ramps and stairs; she has no limitation to reaching or gross manipulation; she is limited to simple work; and

4.  Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

After the Appeals Council declined further review on October 6, 2015, this second appeal followed.

## II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v.

3

Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## III. DISCUSSION

In her motion for summary judgment, plaintiff argues: (1) the ALJ failed to properly assess the medical opinion of treating physician Dr. Orman; (2) the ALJ failed to properly evaluate plaintiff's migraine headaches; and (3) the ALJ erred in determining that plaintiff's testimony was not credible.

### A. Evaluation of Dr. Orman's Opinion

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035,

1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be

rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester,

81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of

the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a

finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and

legitimate reasons, the Commissioner must defer to the opinion of a treating or examining

professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional,

without other evidence, is insufficient to reject the opinion of a treating or examining

professional.  See id. at 831.  In any event, the Commissioner need not give weight to any

conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111,

1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion);

see also Magallanes, 881 F.2d at 751.

    As to Dr. Orman, the ALJ stated:

> On January 15, 2009, Dr. Orman completed a Medical Source Statement
> (MSS) in which he indicated that the claimant cannot lift more than 20
> pounds occasionally, and can frequently lift less than ten pounds.  Her
> ability to stand and/or walk is limited to less than two hours in an eight-
> hour workday.  When asked for medical findings supporting this
> assessment, he wrote "(history) and physical" (Exhibit 10F).  He checked a
> box indicating that an assistive device is needed when standing, and he
> wrote, "leans on shopping cart."  When asked to identify medical findings
> supporting this assessment, he wrote "observed."  He felt she can sit for
> five hours but "needs breaks on (hour)" and again cited "observation"
> when asked to identify medical findings.  She must alternate between
> standing and sitting, and breaks and lunch period do not provide sufficient
> relief.  This too was based on history and observation.  He checked boxes
> that she can never climb, balance, stoop, kneel, crouch, or crawl, can reach
> occasionally, and can handle, finger, and feel for one hour each.  No
> explanation was provided for these restrictions.  She can sit for one hour.
> She cannot work around heights, moving machinery, temperature
> extremes, chemicals, or dusts because she is afraid of heights.  Prognosis
> was fair to poor.

> Although Dr. Orman is a Treating Physician (TP), minimal weight is given
> to this opinion.  The "check-the-box" form does not contain any
> explanation as to the bases of his conclusions.  He cites no objective
> findings.  There are numerous notations in the treatment evidence that she
> has normal gait, and thus his observation that she needs an assistive device

is not supported by the medical evidence.  The opinion is conclusory and brief and inadequately supported.  His findings appear to be based on the subjective report of the claimant.  As his chart notes from January 15, 2009, indicate, he "discussed her functional limitations" with the claimant and "filled out the disability form from Social Security."  (Exhibit 11F, page 2).  Dr. Orman's opinion is not consistent with the findings of Dr. Swillinger, who examined the claimant just ten days earlier (Exhibit 7F, page 3), it is not consistent with her rather substantial activities, and it is not consistent with the subsequent treatment evidence.

As in the prior appeal, the opinions at issue are those contained in Dr. Orman's January 2009 medical source statement.  And as in the prior appeal, the ALJ in this case rejected Dr. Orman's opinions for the same primary reason – lack of supporting objective evidence.

The court finds that the ALJ in this case has made the same error as in the prior case.  Specifically, while the ALJ cites minimal objective evidence as a basis for rejecting Dr. Orman's opinions, the record reflects that Dr. Orman in fact made numerous observations throughout his treatment of history:

| | |
|---|---|
| December 6, 2007 | Dr. Orman observed that plaintiff demonstrated a slightly stiff walk and difficulty sitting and standing.  See CAR388. |
| January 31, 2008 | Dr. Orman observed diffuse trigger points in plaintiff's cervical and trapezius muscles which were easily palpable.  See CAR 387. |
| April 10, 2008 | Dr. Orman observed diffuse trigger points in plaintiff's cervical and trapezius muscles.  See CAR 386. |
| September 18, 2008 | Dr. Orman observed two discrete trigger points on plaintiff's back.  See CAR 384. |
| October 30, 2008 | Dr. Orman observed trigger points on plaintiff's back.  See CAR 383. |
| November 13, 2008 | Dr. Orman observed positive straight-leg raise test, left and right.  See CAR 398. |

These observations constitute objective support of Dr. Orman's opinions.

///

///

///

The court is dismayed that, despite a prior remand directing further consideration of Dr. Orman's opinion, the ALJ in this case appears to have simply repeated the earlier flawed analysis without addressing any of the specific problems identified in the court's prior decision and without addressing the record of plaintiff's treatment with Dr. Orman.  The matter should be remanded for additional consideration of Dr. Orman's opinions.

**B.    Plaintiff's Migraine Headaches**

Following the prior remand, the ALJ obtained follow-up evidence regarding the effects of plaintiff's migraine impairment on her ability to work.  Specifically, the ALJ obtained the opinion of Dr. Flanagan who did not observe any neurological abnormalities or pain associated with migraines.  The ALJ also obtained testimony from Dr. Brovender who, despite plaintiff's migraine pain symptoms, assessed plaintiff with the ability to perform light work.  Based on this evidence, the court does not agree with plaintiff's statement that "the ALJ failed to engage in <u>any</u> adequate evaluation of the testimony and other evidence bearing on the headaches." (emphasis added).

**C.    Plaintiff's Credibility**

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons.  <u>See</u> <u>Saelee v. Chater</u>, 94 F.3d 520, 522 (9th Cir. 1996).  An explicit credibility finding must be supported by specific, cogent reasons.  <u>See</u> <u>Rashad v. Sullivan</u>, 903 F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  <u>See</u> <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony.  <u>See id.</u>  Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing."  <u>See id.</u>; <u>see also</u> <u>Carmickle v. Commissioner</u>, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing <u>Lingenfelter v Astrue</u>, 504 F.3d 1028, 1936 (9th Cir. 2007), and <u>Gregor v. Barnhart</u>, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the

Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely

because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d

341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the
> [symptom] itself, or the severity thereof. Nor must the claimant produce
> objective medical evidence of the causal relationship between the
> medically determinable impairment and the symptom. By requiring that
> the medical impairment "could reasonably be expected to produce" pain or
> another symptom, the Cotton test requires only that the causal relationship
> be a reasonable inference, not a medically proven phenomenon.
>
> 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in
> Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged,

including aggravating factors, medication, treatment, and functional restrictions. See Bunnell,

947 F.2d at 345-47. In weighing credibility, the Commissioner may also consider: (1) the

claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent

testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a

prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5)

physician and third-party testimony about the nature, severity, and effect of symptoms. See

Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the

claimant cooperated during physical examinations or provided conflicting statements concerning

drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the

claimant testifies as to symptoms greater than would normally be produced by a given

impairment, the ALJ may disbelieve that testimony provided specific findings are made. See

Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

/ / /

/ / /

/ / /

Regarding reliance on a claimant's daily activities to find testimony of disabling pain not credible, the Social Security Act does not require that disability claimants be utterly incapacitated.  See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989).  The Ninth Circuit has repeatedly held that the  ". . . mere fact that a plaintiff has carried out certain daily activities . . . does not . . .[necessarily] detract from her credibility as to her overall disability."  See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication").   Daily activities must be such that they show that the claimant is ". . .able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting."  Fair, 885 F.2d at 603.  The ALJ must make specific findings in this regard before relying on daily activities to find a claimant's pain testimony not credible.  See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

In discrediting plaintiff's testimony, the ALJ noted:

The claimant's testimony at the hearing before me is vastly different tha[n] her statement to the Administration in 2008 in which she reported very substantial activities (Exhibit 2E), as well as those made to Dr. Swillinger in January 2009, where she was noted to be "very active" (Exhibit 7F, page 3). . . .  The claimant was asked about the January 22, 2014, chart note that indicates she cut her hand while cutting wood.  I specifically asked if she was outside chopping wood.  She replied, "I was probably just breaking wood for the kindling for the stove, but I don't remember it." The claimant's attorney then asked, "Do you go outside and chop wood, ever?"  The claimant replied, "Oh no." . . .  There is nothing vague or unclear about the treatment notes from January 22, 2014.  She told Dr. Kifune that three days earlier she sustained a saw cut while using a rusty saw "while cutting wood" (Exhibit 26F, page 6).  She needed a tetanus

shot because the "saw blade was rusty and dirty." The claimant was not simply breaking twigs, as Ms. Kreuze would have me believe. She was cutting wood with a saw.

As indicated above, the ALJ may discredit testimony based on inconsistencies in the testimony. Here, plaintiff's testimony that she was "breaking" wood for kindling is inconsistent with her statement to Dr. Kifune that she was using a saw to cut wood. While plaintiff's attorney elicited testimony that plaintiff had not used an axe to chop the wood, it is clear that plaintiff did in fact use a saw to cut the wood and that this was inconsistent with her testimony that she was breaking wood for kindling. The court agrees with plaintiff that there is a difference between "chop" and "cut," just as there is a difference between "break" and "cut." In any event, whether plaintiff was chopping wood or cutting wood, it is clear that she was using a rusty tool and not, as would be suggested by her testimony, simply using her hands to "break" wood for kindling.

The court concludes that the ALJ properly discredited plaintiff's inconsistent testimony.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

# IV. CONCLUSION

Based on the foregoing, the court recommends that:

1.      Plaintiff's motion for summary judgment (Doc. 14) be granted;

2.      Defendant's cross-motion for summary judgment (Doc. 21) be denied; and

3.      This matter be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record and/or further findings addressing the deficiencies noted above.

These amended findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 22, 2018

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE